M. A. McCarthy v. Margaret Scanlon, Administratrix of Martin Scanlon, deceased, Appellant.

*Verdict on insufficiency of evidence.*

It is substantial error to permit a jury to find a verdict on a ground of which there is not sufficient evidence.

*Verdict against the evidence.*

It is error to permit a plaintiff to obtain a judgment on a ground which he explicitly repudiates, and in the face of the explicit finding by the jury against his claim, and the finding of the main fact by the jury in favor of the defendant.

*Fraud on creditors—Practice, C. P.—Insufficiency of evidence.*

In a suit upon a note which the defendant alleged had been given to hinder and delay creditors it appeared that there was only one person who was spoken of as intended to be hindered, and there was no evidence of the nature of his claim, nor that he was, or ever became, a creditor. *Held,* that it was error to permit the jury to find that the note was given to defraud creditors.

Argued Feb. 27, 1896. Appeal, No. 13, Jan. T., 1896, by defendant, from judgment of C. P. Lackawanna Co., Nov. T., 1893, No. 52, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Assumpsit on a promissory note. Before GUNSTER, A. L. J.

The facts appear by the charge of the court below and by the opinion of the Supreme Court.

At the trial plaintiff offered in evidence exhibit "B," being the check testified to by plaintiff (referred to in the charge), dated February 1, 1886, on the Wyoming National Bank of Wilkes-Barre, payable to the order of Martin Scanlon, $5,000, signed M. A. McCarthy, indorsed Martin Scanlon, with the indorsement, Wilkes-Barre, Pa. Wyoming National Bank, February 13, 1886, for the purpose of rebutting defendant's testimony that there was no money passed between these parties at all.

Objected to by the defendant (1) as immaterial, incompetent and irrelevant, as it does not show that it was ever paid by the bank; (2) it does not in any way affect the note in suit, it having been given years before the note in controversy.

By the Court: Objections overruled and bill sealed for defendant. [1]

Plaintiff offered in evidence exhibit "D," being judgment note dated February 4, 1887, signed Martin Scanlon, payable to M. A. McCarthy sixty days after date for $600, with the usual waivers; also exhibit "C," being the judgment dated February 7, 1888, signed by Martin Scanlon, payable to M. A. McCarthy thirty-five days after date for $650, with the usual waivers. Plaintiff having testified that at the time these notes were given to him by Martin Scanlon the amounts set out in the notes were paid by him to the said Scanlon in cash, these notes are offered in connection with said testimony. Objected to by defendant as immaterial, incompetent and irrelevant.

By the Court: Objection overruled and bill sealed for defendant. [2]

The court charged in part as follows:

This is an action brought by M. A. McCarthy against Margaret Scanlon, administratrix of the estate of Martin Scanlon, deceased, to recover the amount of a promissory judgment note, which he alleges Martin Scanlon gave to him in his lifetime, for valuable consideration. The note is dated the 13th day of July, 1888, and is given for $1,000, payable to the plaintiff, McCarthy, with interest, one year after date thereof.

Witnesses have been called upon the part of the plaintiff to prove the signature to the note. They called John Cawley and T. V. Powderly, and their testimony is uncontradicted, and, so far as I understand, the execution and delivery of this note is not denied by them. If there was no other evidence in the case it would be my duty to instruct you to render a verdict in favor of the plaintiff for the amount of the note, with interest to the present time.

The note itself, upon its face, purports to have been given for a valuable consideration, it recites "for value," and therefore prima facie it makes out the plaintiff's case.

[But the defendant makes the defense; she alleges that the note was given without any consideration, and that it was given to protect Mr. Scanlon and members of his family; that the plaintiff took it for that purpose.] [3] Several witnesses have been called upon the part of the defense. I shall refer to the testi-

mony but very meagerly, because the evidence is all for you
and the facts to be drawn from it, but I shall simply call to your
attention some of the features of the testimony as given by some
of the witnesses.

Margaret Scanlon, the administratrix of the estate of Martin
Scanlon, deceased, was called as a witness. You will remem-
ber that it was testified to that Martin Scanlon died in May,
1892, and that it was admitted that Mrs. Scanlon, his widow,
was appointed administratrix of the estate in December, 1892.
She was called as a witness upon behalf of the defense, and she
testified that she had several conversations with Mr. McCarthy
during the lifetime of her husband, with regard to business mat-
ters between her husband and Mr. McCarthy. Two particular
conversations to which she testified I shall refer to briefly. She
testified there were a number, but she particularizes two. The
first that I recall is when she testified that she went with her
husband on one occasion to Wilkes-Barre, and that between
there and McCarthy's house, somewhere on the street, on the
road, they met Mr. McCarthy, and that the conversation between
them turned to this note, and that Mr. McCarthy then and there
promised to bring the note up to her, as I infer from her testi-
mony, however, that is a matter for you, for the purpose of de-
livering it up to her, surrendering the note. She testified that
he promised her then to bring it up.

She says that the next conversation with him she had soon
after the birth of her child, which occurred, I think, in August,
1889. She says about a week or so after her baby was born,
Mr. McCarthy came up and was at their house, and that while
she was in bed, in her bedroom, her husband, with Mr. McCar-
thy, came upstairs ; that her husband was called downstairs
again, and that then the conversation again turned to this note ;
that she felt worried about it; that Mr. McCarthy told her there
was no need of worrying about it, but that she said that she felt
all the more worried about it now on account of the child hav-
ing been born ; that Mr. McCarthy promised her then to bring
the note up, and that he would satisfy those claims which were
of record (you will remember that there is testimony in the
case that there were other claims against Mr. Scanlon by Mr.
McCarthy, of record). That Mr. McCarthy promised not only
to bring this note up, but promised to satisfy those other notes

of record, and that, referring to this note, that he said there was nothing in it, that it was given to protect Martin and the children, in the case of some man by the name of Ryan; that there was no money borrowed. She also testified to some circumstances tending to show the manner in which Mr. McCarthy and her husband did business with each other. She testified that on one occasion Mr. McCarthy gave her $500, said it was rent that Mr. Scanlon had paid on the property. She also testified that they furnished, that is that she and her husband furnished the money to pay the sheriff's costs on a sale by virtue of an execution that was issued on one of the claims that Mr. McCarthy had against her husband. You will remember the record was offered in evidence, the judgment note and the execution showing the sheriff's sale. She testified that instead of McCarthy, the plaintiff in the case, and who was a purchaser at the sheriff's sale, paying these costs, that she and her husband paid them. [Now, this is evidence, gentlemen, tending to show that it was given for the purpose of protecting Mr. Scanlon and his children against Ryan.] [4] . . . .

Upon the part of the plaintiff, Mr. McCarthy is called in rebuttal. He testified that he never met Mrs. Scanlon at Wilkes-Barre; that he saw her at Ashley, that she came to his place at Ashley, and that she asked him to get the property transferred to her, but he denies positively and unequivocally that he ever had any such conversation with Mrs. Scanlon as she testified to; that in none of these conversations that he had with her was there anything said about a note or notes. In answer to the allegation that the transaction between himself and Mr. Scanlon had never been done in good faith, that no money had actually ever passed between them, he testified that in 1886 he purchased property from Mr. Scanlon, and that he paid him $5,000 in cash for it, that he paid for it in cash through the bank, by means of a check, and he produces a check which purports to have been passed through the bank, with Martin Scanlon's signature on the back of it, evidence tending to show that he actually paid Mr. Scanlon the $5,000 cash at that time. (By cash payment I mean cash drawn out of the bank by means of a check.) That, at that time, while he did purchase this property, he agreed with Mr. Scanlon to transfer it back to him at the end of five years, in case Mr. Scanlon was ready to take

it, and that, as a matter of fact, he actually did transfer the property back to Mr. Scanlon in 1888, and was paid back the money by Mr. Scanlon. He also testified that in February, 1887, he loaned Mr. Scanlon $600, and took as security for that loan one of the judgment notes which has been offered in evidence ; that on February 7, 1888, he loaned him $650 more, and took as security for that another judgment note for that amount, which note has also been offered in evidence. And he further testifies that, in July, 1888, on the 13th, he made him another loan of $1,000, and as security for that loan he took this judgment note which has been offered in evidence, and which is in dispute here. . . .

In surrebuttal, the defendant recalls Mrs. Scanlon to testify as to the financial condition of her husband during the years while these matters were going on. She testifies that she was acquainted with the financial condition of her husband, as to what means he had, what money he had. . . .

She testifies that at no time did her husband have over $400 or $500 in the year 1888, when the property was transferred back to Mr. Scanlon. And she also testifies that, instead of the transaction between her husband and Mr. McCarthy being bona fide, they furnished the money to Mr. McCarthy to pay the sheriff's costs at the sale, evidence tending to show that, instead of the sale being a sale made in good faith, for the purpose of enforcing a claim, it was done for the protection of Mr. Scanlon by means of Mr. Scanlon's own money.

Gentlemen of the jury, the three main questions in the case which must be passed upon by you are : First, was this note given for a valid consideration, as claimed by the plaintiff ? He alleges he loaned Mr. Scanlon $1,000 at the time he took this note, and that he took this note as security therefor. Is that true ? Did he make him a loan and take this note as security for it ? If he did, the verdict ought to be in favor of the plaintiff, without any question and without any hesitation.

Second, was this note given without any consideration, and without any intent to hinder and delay creditors ? If there was no consideration given for the note, [and there was no intention to hinder and delay Mr. Scanlon's creditors at the time it was given, the verdict ought to be in favor of the defendant,] [5] without any question, because, if the plaintiff gave nothing for

it and there was no intention to hinder and delay Mr. Scanlon's creditors, he ought not to recover.

[But a very important question the law raises, and that is, whether or not, if a party give a note of this kind, without any consideration at all, if it be given with the intent to hinder and delay creditors, he can set up that as a defense. Therefore, the third question rises in the case, under the evidence, and that is : Was this note given without any consideration, and with the intent to hinder and delay creditors ? The law has not been discussed in the case, and I do not propose to instruct you upon that question, but if you should find that to be the fact, then I will ask you to find a special verdict. I will ask you to find a special verdict, anyhow, and in that event and for that reason I have prepared three forms for a verdict, one of which you must agree upon. I will send them out with you, so that you may deliberate upon all of them, because they fairly raise the questions that are raised by the evidence in the case.

If you find that the note in this suit is given for a valuable consideration, as security for a loan of $1,000, as claimed by the plaintiff, then you will find in favor of the plaintiff for the amount of the note, with interest down to the present date. If you find that the note in suit was given without any consideration, and without any intent to hinder and delay creditors, then you will find in favor of the defendant. If you find that the note was given without any consideration, but for the purpose of hindering and delaying the creditors of Mr. Scanlon, then I will respectfully request you to find, that you are ignorant in point of law upon which side you ought to find under these facts, that is upon which side you ought to find the issue,] [6] and that if, upon the whole matter, the court shall be of opinion that the issue is proved ·for the plaintiff, then you find for the plaintiff accordingly, for the amount of the note, with interest to the present time, but if the court should be of the opposite opinion, then you find in favor of the defendant. That will leave it hereafter to be determined by the court, if that state of facts be true, whether the plaintiff is entitled to the verdict, or whether the defendant is entitled to it. I decline to pass upon that question of law now, because it has not been argued by counsel. I will send these forms of verdicts out with you, so that you may have the questions raised by the evi-

dence distinctly before you, and you will consider all three questions, and agree upon the verdict that you find under the evidence.

At the time of the rendition of the verdict the court further said to the jury : " There was no evidence on the part of the plaintiff to show that the note was given without any consideration, or for the purpose of hindering and delaying creditors, therefore, I give you binding instructions to find that as a matter of fact, in addition to your verdict."

The jury rendered the following verdict : We find that Martin Scanlon, deceased, in his lifetime, on the 13th day of July, 1888, executed and delivered to M. A. McCarthy, the plaintiff in this case, a promissory judgment note, under seal, of which the following is a copy :

" ASHLEY, Pa., July 13, 1888.

" One year after date I promise to pay to M. A. McCarthy, or bearer, the sum of one thousand dollars, with interest, and without defalcation, for value received ; and I do hereby confess judgment for the aforesaid sum, with interest, costs of suit, release of errors, waiver of inquisition, and without stay of execution after payment. And I do further waive all right to the benefit of the provisions of the act of assembly of 9th April, 1849, entitled : ' An act to exempt property to the value of $300 from levy and sale on execution and distress for rent.'

(Signed)            " MARTIN SCANLON."    [SEAL]

That said Martin Scanlon died May, 1892, and that letters of administration upon his estate were duly issued by the register of wills of Lackawanna county to Margaret Scanlon, the present defendant ; that said note was given by said Scanlon, without any consideration and for the purpose of hindering and delaying creditors of said Scanlon, and that there was no evidence on part of plaintiff to show that said note was given without any consideration or for the purpose of hindering and delaying creditors. We are ignorant, in point of law, upon which side we ought, upon these facts, to find the issue ; if upon the whole matter the court shall be of opinion that the issue is proved for the plaintiff, we find for the plaintiff, accordingly, for the sum of $1,415, being the amount of the debt and interest on said note ; but if the court are of an opposite opinion, then we find in favor of the defendant.

Judgment was subsequently entered on the verdict for plaintiff.

*Errors assigned,* were (1, 2) rulings on testimony, quoting the bill of exception; (3, 4, 5, 6) portions of charge specified, quoting them.

*R. A. Zimmerman,* with him *George M. Watson* and *F. J. Fitzsimmons,* for appellant.—The evidence was insufficient to justify the submission to the jury of the question whether the note was given to hinder and delay and defraud creditors : Clarkson v. Thom., 2 Penny. 491.

*Joseph O'Brien,* with him *John P. Kelly,* for appellee.—The defendant cannot take advantage of his own fraud: Killinger v. Reidenhauer, 6 S. & R. 531 ; Buehler v. Gloninger, 2 W. 226 ; Reichart v. Castator, 5 Binn. 109 ; Pringle v. Pringle, 59 Pa. 281 ; Evans v. Dravo, 24 Pa. 62.

OPINION BY MR. JUSTICE MITCHELL, July 15, 1896 :

This case was very loosely tried by both sides, the witnesses apparently being allowed to tell whatever they thought bore on the dispute without reference to its relevancy or their own legal competency. Although therefore the check and judgment notes, exhibits B, C and D, had no apparent connection with the note in suit, yet the assignments of error to their admission cannot be sustained because the plaintiff had been allowed to testify all about them and had been cross-examined on them without regard to their relevancy or to the fact that Scanlon by whom they were given was dead. Though their admission was not strictly regular, yet the objection came so late that we would not reverse for that cause.

But there was substantial error in permitting the jury to find a verdict on a ground of which there was no sufficient evidence. The defendant's counsel offered to prove that the note in suit was given without consideration, and " to protect Scanlon (the maker) from any creditors he might have, especially from a judgment he expected to be obtained against him by one Ryan." But this part of the offer, whatever might have been the effect of such evidence on the defendant's case, was excluded, and

the testimony confined to the question of consideration. The defendant in testifying did give a conversation in which she alleged that the plaintiff had said that there "was nothing in it (the note), it was simply given for the protection of Martin and his children in this case of Ryan's." This however was not her own testimony to the fact, but to an admission of plaintiff against his present claim, and at the most does not show that Ryan had anything more than a claim. There is no evidence in the case what the nature of his claim was, or that he was, or ever became a creditor, and there is not a suggestion that there was any other creditor that Scanlon was seeking to hinder or delay. It was clearly apparent that the transactions between the parties were not the ordinary dealings of borrower and lender, and it is equally manifest that the witnesses on neither side were telling the entire truth. The jury seem to have been convinced that there was no consideration for the note, and therefore decided against the plaintiff on his claim. In the absence however of any explanation why the note was given at all when no money passed, they found an easy solution in the suggestion that it was to defraud Scanlon's creditors. Perhaps they were right in fact, but we cannot say so, or permit them to say so without evidence. It would be at best only a good guess. The result is that plaintiff has a judgment on a ground that he expressly repudiated, and in the face of an explicit finding by the jury against his claim, while the defendant has a judgment against her notwithstanding a finding of the main fact of the defense in her favor.

It was error to permit the jury to find that the note was given to defraud creditors in the absence of evidence that there were any creditors to defraud, and to enter judgment on such finding.

Judgment reversed and venire de novo awarded.