## Gray v. Gardner et al., Administrators.

*Ellis L. Orvis, W. D. Zerby* and *A. C. Dale*, for plaintiff.
*N. B. Spangler* and *Ivan Walker*, for defendant.

FLEMING, P. J., Jan. 4, 1929.—We have for disposition the motion of the defendants for a new trial, a verdict having been rendered in favor of the plaintiff. Six reasons are advanced in support of such motion, all of which are predicated upon an alleged error in the charge of the court, wherein we spoke as follows:

"We say to you, as a matter of law, that a negotiable instrument is *prima facie* evidence that it is for a valuable consideration and that the person whose signature appears thereon has become a party thereto for value.

"We say to you, further, that this presumption may be rebutted, and it is for you to determine in this case, at the time the note purports to have been signed, a consideration existing to support it or not."

The note upon which this suit is based is as follows:

"$1175                                    "Howard, Pa., Oct. 25, 1915.

"Four years after date, I, we or either of us, promise to pay to the order of Irvin G. Gray at the First National Bank eleven hundred and seventy-five dollars without defalcation or stay of execution, for value received; and confess judgment for the above sum, with five per cent added for collection fees;

hereby waiving the right of inquisition and appeal, and the benefit of all laws exempting real or personal property from levy and sale, and also waiving protest and notice of dishonor. This note shall be negotiable.

"P. O. Address. Note to draw six per cent int. from date.

"(Signed)    JOSEPH D. DIEHL."

Upon the back of the said note is found the following notation: "Received of Joseph D. Diehl. Payment of twenty-five dollars on this note. $25.00 Apr. 23 (24) 1926."

Concisely spoken, the defendants complain that the note in suit is not a negotiable instrument, and that our statement above referred to was misleading to the jury and was sufficient to eliminate from their minds the evidence offered by the defendants.

Let us keep in mind the admitted facts. The plaintiff is the original payee named in the note. The defendants are the personal representatives of the maker of the note, who is now deceased. There is no denial of the genuineness of the signature of the maker. There are no allegations or proof of fraud, duress, accident or mistake. No judgment was entered upon the note, by virtue of the confession therein contained, either before or after maturity of the note. The words "and confess judgment for the above sum . . ." and the words "This note shall be negotiable" are printed in the body of the note.

Section 5 of the Negotiable Instruments Act of May 16, 1901, P. L. 194, 195, provides, in part, as follows: "An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. But the negotiable character of an instrument, otherwise negotiable, is not affected by a provision which . . . (2) authorizes a confession of judgment if the instrument be not paid at maturity."

The note is in writing and is signed by the maker; it contains an unconditional promise to pay a sum certain in money; it provides for a definite future time for payment, and is payable to the order of the payee. Thus far it unquestionably contains all the requisites of a negotiable instrument. It goes further to authorize a confession of judgment. It does not say specifically and in so many words that such confession shall become operative only "if not paid at maturity." Nor does it specifically, and in so many words, authorize such confession "as of any term" or "before maturity" or anything of that sort. If there were no specific words providing that "this note shall be negotiable," there would be no question that the negotiable character of the instrument had been destroyed by the addition of the confession of judgment, as there would then be no restriction upon the exercise of the confession of judgment, and it would be possible for such to be confessed before maturity, contrary to the provisions of the act. But the parties to the note specifically provided by the insertion of apt and unambiguous words that the note should be negotiable.

A bill or note, the same as any other written instrument, must be construed as a whole so as to give effect to every part of it, if possible. The contract must be collected from the "four corners" of the document, and no part of what appears there is to be excluded: 8 Corpus Juris, § 136, page 85. A negotiable note, according to a frequently repeated saying, is a "courier without luggage, whose countenance is its passport," and this is true in respect of the determination of the parties thereto. To ascertain this intention, resort is first had to the language of the instrument. If that appears to be perfectly plain and capable of a legal construction, then the force and effect to be given to the contract must be determined by its terms. It is a well-known rule of law that the intention of the parties who made the contract is to be deter-

mined from the whole instrument. The contract primarily must be collected from the four corners of the document, and no part of what appears there is to be excluded. But in expounding any agreement, the court must consider the subject-matter; the object of making it; the sense in which the parties mutually understood it at the time it was made, and the place where it was entered into. But while the writing may be read by the light of surrounding circumstances, in order to more perfectly understand the intent and meaning of the parties, yet, as they have constituted the writing to be the only outward and visible expression of their meaning, no other words are to be added to it or substituted in its stead. The duty of the court in such case is to ascertain, not what the parties may have secretly intended, as contradistinguished from what their words express, but what is the meaning of the words which they have used: 3 Ruling Case Law, § 49, page 866. If a contract contains ambiguous words or words of doubtful construction, such are to be considered most strongly against the party who executed the contract. If the contracting party uses, over his own signature, language of a doubtful meaning, he cannot complain when the construction is favorable to the other contracting party, who is not presumed to have chosen the expression of doubtful meaning: 3 Ruling Case Law, § 55, page 872.

We have shown beyond contradiction that the note in suit contains all the characteristics of a negotiable instrument, and were the words relating to the confession of judgment absent therefrom, there would be no doubt that the same is negotiable. By the specific words of the Negotiable Instruments Act, supra, this negotiable character could not be destroyed by an authority to confess judgment if not paid at maturity. We are asked to say that because the specific words "if not paid at maturity" are not inserted after the words "and" and before the words "confess judgment . . ." that the note in suit is not a negotiable instrument. In other words, the defendant would have us disregard the patent intent of the maker, who said in apt words "this note shall be negotiable," and read into the interpretation thereof an intent wholly negativing these express words. We cannot read into the determination of this question, after the words "confess judgment," the words "as of any term" or "before maturity," for such would be in conflict with the express direction of the maker found within the four corners of the instrument. We must give effect, if possible, to every part of the instrument and must not exclude any part of it. The legislature has said, in effect, that a negotiable instrument may contain an authority to confess judgment, but in such an instrument such power of confession cannot be exercised until after maturity and default in the payment of the note. In the instant case, the maker of the note in suit explicitly intended to give the instrument a negotiable character by declaring it to be such. By so constituting it, he made it impossible for the holder to enter judgment thereon before maturity, and this is substantiated, at least to some degree, by the fact that no judgment was entered thereon. We can properly give consideration to the entire instrument and not exclude anything therefrom by saying that the words "this note shall be negotiable" adds by direct inference, in the light of the provisions of the Negotiable Instruments Act, the restriction that no judgment shall be confessed unless "if not paid at maturity" or, expressed in other words, it restricts the right of the holder to enter judgment by virtue of the power to confess therein contained until after the maturity of the note and a default in payment. Such a conclusion is drawn from the entire instrument and not from any specific part thereof. It involves a consideration of the entire subject-matter and injects reason into the object of making it, all of which

is substantiated by the manner in which the parties to this suit dealt with it from the time of its utterance until the death of the maker.

We fail to find that this question has ever arisen in any reported authority. For enlightenment, we have referred to Paton's Digest, that excellent compilation of legal opinions of Judge Thomas B. Paton, general counsel of The American Bankers Association. In volume 1, § 3504, page 580, we find this query: "Does a note otherwise negotiable become non-negotiable by the writing of the word 'Non-negotiable' across its face before delivery? Is payment thereof to be had only between the payor and payee?" To which query, Judge Paton replies as follows: "Negotiability is destroyed. The words 'order' or 'bearer' confer negotiability, but in this case their effect is negatived by expressly writing across the face of the instrument a statement to the effect that it is non-negotiable. The note would still be assignable by the payee, but it would be a mere non-negotiable contract, subject in the hands of the assignee to equities between the original parties."

The note in the instant case, as we have shown, meets all the requirements of negotiability. The only shadow of doubt existing is as to the limits of the authority to confess judgment; that is to say, as to whether such judgment could be confessed before maturity, and the maker of the note has eliminated the remaining portion of such shadow of doubt by expressly stating that "this note shall be negotiable." Applying in a converse sense the reasoning applied by Judge Paton in his answer to the query of a member bank, we must conclude that the note in the instant case is negotiable.

The instant case is clearly distinguishable from Milton National Bank v. Beaver, 25 Pa. Superior Ct. 494, and Volk v. Shoemaker, 229 Pa. 407, in that in those cases the power to confess judgment was clearly extended to "as of any term" or to before maturity without any such express limitation by the maker as is existent here.

We conclude, therefore, that we did not err in referring to the note in suit as a negotiable instrument.

However, for the purpose of further considering the reasons advanced by the defendants, let us assume that such a note as is in suit here is not a negotiable instrument. Further, let us bear in mind that the defendants did not allege payment or cancellation, but contended, solely by attempting to raise an inference, that the note in suit had been given for some undisclosed purpose. In this course, the defendants were given an almost unrestricted opportunity to prove such a contention; in fact, so broad that we feel that, if there was error committed in the trial of this cause, it was in our admitting defendants' Exhibit No. 7, being a note for $2000, dated Jan. 1, 1910, due one day after date, to the order of Joseph D. Diehl and signed Irvin G. Gray, offered by the defendants "for the purpose of showing the impossibility of the note in suit being given for an indebtedness due from the defendant, Joseph D. Diehl, to the plaintiff and as having some bearing on the relationship between the parties."

The instant case is quite analogous to that of McCarty v. Scanlon, 187 Pa. 495. There, the signature to the promissory note upon which the suit was brought was not denied, but the defendant set up the contention that it was executed and delivered to the plaintiff for more or less misty reasons. The defendant therein produced to the jury (and we do not have such proof here) evidence of alleged declarations by the plaintiff substantially that there was no money consideration passed for the paper, but that it was held for some undisclosed reason other than as an evidence of direct indebtedness. Chief Justice Sterrett said therein: "The defense did not allege payment or

cancellation, but contended that the note had been given for some undisclosed purpose, and that the purpose, whatever it was, had been fulfilled. The trial judge was, therefore, right in embodying in his answer the remark that the plaintiff could recover unless the defendant showed one of the defenses to the note presented in the point, or that the purpose for which it had been given. had been fulfilled." This case was the second appeal between the same parties and over the same note. The first appeal appears in 176 Pa. 262, and therein the trial judge said: "The note itself, upon its face, purports to have been given for a valuable consideration; it recited, 'for value,' and, therefore, *prima facie*, it makes out the plaintiff's case." The Supreme Court in both appeals sustains the trial judge in the respect that a non-negotiable judgment note, as between the original parties, is *prima facie* of sufficient consideration. We said no more than this in our charge in the instant case.

In the instant case, the note bore evidence of a payment on the same as of April 23, 1926, or April 24, 1926. The exact day was in question, due to an overmarking, which was attempted to be explained by plaintiff's witnesses. Our charge was based upon this payment as a matter of preliminary consideration, and the jury were told that if they found as a fact that such payment had not been made as indicated on the note, or if made at or about the time indicated on the note, but for some other purpose than the note in question, that the claim of the plaintiff would be defeated by the statute of limitations and that the verdict should be for the defendants. The verdict rendered indicates clearly that the jury found as a matter of fact that the defendants' decedent had made a payment on the note as recently as the year 1926. This was necessary to be found, under our charge, before any consideration of the sufficiency of consideration of the note could be had, and furnished in itself rebuttal, to some degree at least, if not entirely, of the defendants' contention that the note in suit had been given for some undisclosed reason and was not enforceable.

Plaintiff in this case did not rest alone upon the presumption of consideration contained in the note itself, but carefully and in detail adduced evidence showing, to the exact cent, how the amount of the note was arrived at, the circumstances of the settlement between the plaintiff and the defendants' decedent, the inability of the parties to procure a form of note with which to evidence their agreed settlement on the day on which the same was reached, the subsequent procurement of such a form by the plaintiff and his entering therein the material parts, minus the date, and the mailing of the same to the defendants' decedent, a number of miles away, for his signature, and the subsequent return of the same by mail and without protest of any sort and duly executed. Further evidence of subsequent conversations between the plaintiff and defendants' decedent concerning the desire of the plaintiff to have the note paid and the statements by the defendants' decedent of his inability to pay, but of his intention to pay the same as soon as a new bank which he contemplated forming [had been organized], were adduced at the trial by responsible witnesses, none of whom were shaken on cross-examination or contradicted by any evidence adduced by the defendants. Defendants' case was based upon the testimony of M. I. Gardner, one of the administrators, who quite frankly admitted that he had no knowledge of any transactions between his decedent and the plaintiff prior to his becoming one of the administrators of the estate. (See Notes of Testimony, page 41.) A careful reading of his entire testimony shows it to refer entirely to matters wholly irrelevant to the issue herein. John Diehl, produced as a witness for the defendant, sought to testify as the decedent's bookkeeper. His testimony

454

referred to matters so remote to the issue that defendants' counsel finally withdrew the only material offer sought to be made and did not press the same. (See Notes of Testimony, pages 47, 48 and 49.)

Reviewing the entire record, we find, in the language of the brief of the learned counsel for the plaintiff, that "the utmost that the defendants could have hoped for at the close of the case was a verdict for the defendants through prejudice or conjecture." There was, indeed, no actual matter of fact to be submitted to the jury. The note was in evidence; there was consideration presumed; there was consideration actually proven and uncontradicted; there was an affirmance of the note by a payment on account made by the defendants' decedent without protest; there was a preponderance of the evidence that defendants' decedent had acknowledged his indebtedness on the note and had promised to pay it when the bank, of which he was a promoter, had been formed. None of these material points were contradicted in any degree by the defendants. ·They failed to reveal any purpose for the existence of the note other than the purpose expressed by the note itself, to wit, payment of a sum certain at a time certain. No evidence was offered to show that the note had been paid or canceled in any manner. Even presuming that the note in question was a non-negotiable note and that no presumption of consideration existed, the record is so devoid of a proper defense as to make our reference to the note in the manner in which the same was made, as a negotiable instrument, harmless error.

And now, Jan. 4, 1929, motion for a new trial is refused and judgment is directed to be entered upon the verdict upon payment of the jury fee.

From S. D. Gettig, Bellefonte, Pa.